IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIE BRINKLEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 1:04cv184-T |
| | ) | (WO) |
| DIALYSIS CLINIC, INC., | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

In this lawsuit, plaintiffs Willie Brinkley, Jerome
Cotton, and Kimberly Bush charge defendant Dialysis
Clinic, Inc. ("DCI") with violating the Civil Rights Act
of 1866, as amended, 42 U.S.C.A. § 1981; more
specifically, they claim that DCI discharged them because
they are African-American, and Cotton further claims that
DCI refused to give him a lateral transfer because of his
race. Brinkley also claims that DCI discharged him
because of his National Guard membership, in violation of
the Uniformed Services Employment and Reemployment Rights
Act ("USERRA"), 38 U.S.C.A. § 4311. Jurisdiction is

proper under 28 U.S.C.A. § 1343 (civil rights), 38
U.S.C.A. § 4323(b) (USERRA), and 42 U.S.C.A. § 1331
(federal claims).

This case is currently before the court on DCI's
motion for summary judgment.  For the reasons detailed
below, summary judgment is granted as to the race
discrimination claims and denied as to Brinkley's USERRA
claim.


## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings,
depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any, show that
there is no genuine issue as to any material fact and
that the moving party is entitled to a judgment as a
matter of law."  Fed. R. Civ. P. 56(c).  Under Rule 56,
the party seeking summary judgment must first inform the
court of the basis for the motion, and the burden then
shifts to the non-moving party to demonstrate why summary

2

judgment would not be proper.  Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986); see also Fitzpatrick v. City of
Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993)
(discussing burden-shifting under Rule 56).  The non-
moving party must affirmatively set forth specific facts
showing a genuine issue for trial and may not rest upon
the mere allegations or denials in the pleadings.  Fed.
R. Civ. P. 56(e).

     The court's role at the summary-judgment stage is not
to weigh the evidence or to determine the truth of the
matter, but rather to determine only whether a genuine
issue exists for trial.  Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 249 (1986).  In doing so, the court must
view the evidence in the light most favorable to the non-
moving party and draw all reasonable inferences in favor
of that party.  Matsushita Elec. Indus. Co. v. Zenith
Radio Corp., 475 U.S. 574, 587 (1986).

## II. FACTUAL BACKGROUND

What follow are Brinkley's, Cotton's, and Bush's versions of the facts regarding their treatment while employees at DCI's Dothan, Alabama clinic and their subsequent discharges during the company's reduction-in-force beginning in the summer of 2002.

<u>Brinkley</u>: He was hired by DCI's technical department around June 1999 as a part-time technician.[1] Subsequently, he worked 40-hour weeks, even though he simultaneously attended school, maintained another job during most of his employment with DCI, and was active in the National Guard, which required that he attend drills every other weekend.

While employed at DCI, Brinkley and other black employees were forced to do most of the patient lifting while white employees sat and joked about it;[2] white

_____

1.   Plaintiffs' brief in opposition to defendant's motion for summary judgment (Doc No. 40), Exhibit 1, Deposition of Willie Brinkley, pp. 22-23.

2.   <u>Id</u>. at p. 89.

4

employees ate their lunches together and refused to relinquish their seats for Brinkley and other black employees to eat;[3] and Brinkley inquired about, but was not allowed to attend, training school before his discharge.[4]

In 2002, because of poor financial performance and overstaffing at the Dothan clinic, DCI initiated lay-offs. But prior to any lay-offs, all the technical employees' hours were cut.  Brinkley's hours were cut considerably more than his co-workers.[5]

Kyle Weaver was tasked with conducting lay-offs in the technical department, where Brinkley, Cotton, and five other employees worked.  Temporary and part-time employees were to be terminated first, and, if necessary, employees with less seniority, ability, and

---

3.   Id. at p. 96.

4.   Id. at pp. 99-100, 109.

5.   Id. at pp. 86-88.

qualifications to perform the essential functions of the department were next in line.

Three employees were discharged in the first round: Brinkley on February 1, 2003, and two white employees on February 23 and March 2.  This left four employees: two whites and two blacks, including Cotton.

Weaver stated that his decision to discharge Brinkley was because of Brinkley's school and work commitments and because of "the world situation with the war and everything, the fact that [Brinkley] can be called up."[6]

Cotton: He took a part-time position in August 2001. After approximately three or four months he became a full-time technician.

_____

6.  Id. at p. 72.  In his affidavit, Weaver does not list Brinkley's military status as one of the factors he considered in discharging Brinkley.  Defendant's submission of evidentiary material in support of its motion for summary judgment (Doc. No. 33), Exhibit 8, Affidavit of Kyle Weaver, p. 5.  Nevertheless, at the summary-judgment stage the court will assume that Brinkley's version of his conversation with Weaver is true.

During Cotton's tenure at DCI, Weaver did not engage in pleasantries with black employees.[7]  Gill Lawson, Brinkley and Cotton's supervisor, referred to Cotton as "Boy," "Jethro," and "Leroy."[8]  Like Brinkley, Cotton requested and was denied training opportunities.

In the summer of 2003, a vacancy occurred for a technician in the nursing department.  Jeremy Strickland, one of the two remaining white employees, transferred to the position.  Thereafter, Cotton had one white and one black co-worker who had survived the lay-offs.

On October 24, 2003, Cotton was discharged.

In February and July 2004, the technical department hired two new technicians.

Bush: She joined the DCI's nursing department as a technician around July 2001.  After approximately a month, she changed positions to a hybrid placement that

_____

7.  Plaintiffs' brief in opposition to defendant's , motion for summary judgment (Doc No. 40), Exhibit 2, Deposition of Jerome Cotton, p. 59.

8.  Id. at p. 66.

7

included, among other duties, working as a laboratory technician, a unit clerk, and a medical records assistant.[9]

While employed at DCI, she was disciplined for using her cell phone inside the facilities; some white employees were not.[10]

On or about August 8, 2002, Bush was terminated. A short time later, DCI put an advertisement in the newspaper for a laboratory technician position.[11]   DCI hired Sandy Ingram, a white person, to cover for a receptionist who had become ill on August 19, 2002.[12]   A DCI patient informed Bush that Ingram was working in the laboratory where Bush previously worked.

---

9.   Id., Exhibit 3, Deposition of Kimberly Bush, pp. 13-15.

10.   Id. at p. 23.

11.   Id. at p. 61

12.   Defendant's submission of evidentiary material in support of its motion for summary judgment (Doc. No. 33), Exhibit 4, Affidavit of Mona Gautney, p. 2; Exhibit 8, Affidavit of Kyle Weaver, p.3.

### III. DISCUSSION

Brinkley, Cotton, and Bush assert that they were discharged because of their race, in violation of § 1981. Cotton also asserts a failure-to-transfer claim under this provision.  Finally, Brinkley asserts a USERRA claim that his military status was an additional improper motive for his termination.  The court will first address the § 1981 claims and then move on to the USERRA claim.

### A. § 1981 Claims

Section 1981 prohibits employers from engaging in intentional racial discrimination. <u>General Bldg. Contractors Ass'n v. Pennsylvania</u>, 458 U.S. 375, 391 (1982); <u>Brown v. American Honda Motor Co.</u>, 939 F.2d 946, 948 (11th Cir. 1991).  When, as in this case, the plaintiffs offer circumstantial evidence to establish a disparate-treatment claim, the court assesses the sufficiency of the proffered evidence using the burden-shifting framework established in <u>McDonnell Douglas Corp.</u>

9

v. Green, 411 U.S. 792 (1973); see also Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981).

Under the McDonnell Douglas approach, the plaintiffs have the initial burden of establishing a prima-facie case of unlawful discrimination by a preponderance of the evidence.  McDonnell Douglas, 411 U.S. at 802.  A prima-facie case requires "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion."  Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 358 (1977). A prima-facie case raises a presumption of illegal discrimination.  Burdine, 450 U.S. at 254 (1981); Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc).

However, the establishment of a prima-facie case does not, in itself, entitle the plaintiffs to defeat a summary-judgment motion.  Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir. 1987).  If they establish a prima-facie case, the burden then shifts to DCI to rebut

10

the presumption by articulating a legitimate, nondiscriminatory reason for its employment action. Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997). "This intermediate burden is 'exceedingly light.'" Id. (quoting Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994)). DCI has a burden of production, not persuasion, and does not have to persuade a court that it was actually motivated by the reason advanced. Burdine, 450 U.S. at 254, 258.

Once DCI satisfies this burden of production, the presumption of discrimination is eliminated and the plaintiffs have the opportunity to come forward with evidence, including the previously produced evidence establishing the prima-facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. Chapman, 229 F.3d at 1024.

### (1) Discriminatory-Discharge Claims

One important point needs to be made at the outset. Brinkley, Cotton, and Bush do not challenge DCI's decision to conduct a reduction in force; they admit that financial circumstance warranted one. Their challenge is solely to DCI's decisions to select them for discharge as a part of that reduction.

There are several ways to establish a prima-facie case of discrimination. Schoenfeld v. Babbitt, 168 F.3d 1257, 1268 (11th Cir. 1999); Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (11th Cir. 1984). All parties agree that one method of establishing a discriminatory discharge claim during a reduction-in-force is to show that the plaintiffs (1) were members of a protected class; (2) were discharged; and (3) were qualified for their own position or to assume another position at the time of their discharge, along with (4) some additional evidence that would allow a reasonable fact finder to conclude that the employer intended to

12

discriminate in making the discharge decision.  <u>Benson v.</u>
<u>Tocco, Inc.</u>, 113 F.3d 1203, 1208 (11th Cir. 1997).

As a general principle, "demonstrating a prima facie
case is not onerous." <u>Holifield</u>, 115 F.3d at 1562.
Neither party disputes that there is sufficient evidence
to establish the first two elements of the prima-facie
test, namely that Brinkley, Cotton, and Bush were
protected African-American employees who were discharged
from DCI.  Additionally, because Brinkley, Cotton, and
Bush assert much of the same evidence in the prima-facie
and pretext stages of the burden-shifting framework, this
court will assume that they have presented a prima-facie
case and proceed directly to the second and third prongs
of the <u>McDonnell Douglas</u> test.

<u>Brinkley</u>:  DCI has articulated a legitimate,
nondiscriminatory reason for Brinkley's discharge.
Specifically, DCI asserts that Brinkley was discharged,
as part of a reduction-in-force, because DCI believed him
to be a part-time employee.

13

Because DCI has meet its burden of production, Brinkley must show that DCI's reason is pretextual. Brinkley provides the following evidence to support his claim that DCI's stated reason for discharging him is pretext: (1) DCI's refusal to send him to training school; (2) DCI's practice of forcing black employees to do disproportionate patient lifting; (3) DCI's hiring of new employees after Brinkley's discharge; (4) white DCI employees' reluctance to eat lunch with black employees; and (5) DCI's incorrect characterization of him as a part-time employee.[13]

First, Brinkley argues that his lack of training is indicative of DCI's intent to discriminate against him

---

13. Plaintiffs' brief also asserts that Lawson "gave black people nicknames such as doofus, LeRoy, and boy." Plaintiffs' brief in opposition to defendant's motion for summary judgment (Doc No. 40), p. 5. However, this assertion mischaracterizes Brinkley's deposition testimony, which states that Lawson gave "people nicknames, like Doofus, Jethro, that kind of thing" and in which Brinkley specifically noted that he did not recall Lawson ever making any racially offensive or inappropriate remarks. Id., Exhibit 1, Deposition of Willie Brinkley, pp. 49-50.

during its reduction-in-force.[14]    This court has previously found that the failure to train an employee in a discriminatory promotion context can give rise to an inference of discrimination where the defendant has "purposefully allowed one potential candidate, but not the other, to be trained in the skills necessary for advancement." <u>Floyd v. Elmore County Bd. Of Educ.</u>, 322 F. Supp. 2d 1300, 1304 (M.D. Ala. 2004) (Thompson, J.). Here, Brinkley's African-American co-worker received the training, belying the contention that race was driving the training allocation decisions. Additionally, the two white employees laid-off around the same time as Brinkley also did not have access to the training in question. Accordingly, DCI's refusal to provide Brinkley with training opportunities afforded some other employees[15]

---

14. Brinkley does not contend that this lack of training constitutes an independent failure to train case. <u>See</u>, <u>e.g.</u> <u>Thompson v. Potomac Elec. Power Co.</u>, 312 F.3d 645 (4th Cir. 2002).

15. Plaintiffs' brief in opposition to defendant's motion for summary judgment (Doc No. 40), Exhibit 1, (continued...)

does not support an inference that DCI purposefully availed white employees of training denied their African-American co-workers, rending the latter group more vulnerable to discharge.  But most importantly, Brinkley has not shown that the training he was denied specifically addressed those abilities that were important in the selection of those for discharge, or, in other words, that but for his lack of training on certain abilities he would not have been selected for discharge.

Second, Brinkley's contention that he, instead of a white employee, Rodney Brasington, did most of the patient lifting also fails to support an inference of discrimination surrounding Brinkley's discharge.  Before making a comparison of Brinkley's lifting duties with those of Brasington, Brinkley must first show that he and Brasington were "similarly situated in all relevant respects."  Holifield, 115 F.3d at 1562.  Brinkley and Brasington did not have the same jobs.  Brasington worked

---

15.  (...continued)
Deposition of Willie Brinkley, pp. 88, 109-110.

in reuse,[16] a position Brinkley desired but was not permitted to do.[17] But more importantly, Brinkley has not shown how patient lifting had anything to do, one way or the other, with his selection for discharge.

Third, Brinkley saw a job advertisement in the newspaper and was informed by his previous patients that DCI continued to hire employees following his lay-off.[18] There is not "any added burden on employers to ... rehire laid-off workers in the protected [class] as a matter of course." James v. Arrow Co., 75 F.3d 1528, 1532-33 (11th Cir. 1996). However, a discharged employ "who applies for a job for which [he] is qualified and which is available at the time of [his] termination must be considered for that job along with other candidates, and cannot be denied the position based on [his protected status]." Id. at 1533.

---

16.   Id. at pp. 27, 89

17.   Id. at p. 109

18.   Id. at pp. 129-130.

17

Brinkley does not provide any evidence regarding who the new employees were, when they were hired, or what positions they filled.[19]   DCI admits to hiring two new employees in the technical department in February and July 2004.   However, this was long after Brinkley was discharged and there is no evidence that Brinkley applied for these positions despite their posting in the local newspapers.   Therefore, even assuming that these new employees were not members of the protected class, which is not clear from the record, this evidence is insufficient to draw an inference of discrimination.

Fourth, Brinkley alleges that Lawson and other white employees would take their lunch first and refuse to make room for black employees to join them.   Generally, the words or conduct of non-decisionmakers, or of decisionmakers unrelated to the decisionmaking process, will not satisfy the employee's burden.   Steger v. Gen. Elec. Co, 318 F.3d 1066, 1079 (11th Cir. 2003); Rojas v.

---

19.   Id.

State of Florida, 285 F.3d 1339, 1343 (11th Cir. 2002);

Jones v. Bessemer Carraway Med. Ctr., 151 F.3d 1321, 1323

(11th Cir. 1998).  There is no evidence that Lawson was

a decisionmaker with regard to the lay-offs, and to the

extent Lawson may have indirectly influenced Weaver's

decisions by completing Brinkley's employee evaluations,

there is no evidence that Weaver actually consulted these

evaluations or that the evaluations rated Brinkley as

anything  other  than  a  good  or  excellent  employee.[20]

Lawson's actions cannot be attributed to Weaver, the

actual decisionmaker.

That being said, Lawson did exercise direct input into

the    hiring    decisions    following    the    lay-offs.[21]

Nevertheless, this court has previously stated that DCI

had no affirmative duty to rehire laid-off employees as

well as concluded that Brinkley has provided insufficient

---

20. Defendant's submission of evidentiary material
in support of its motion for summary judgment (Doc. No.
33), Addendum to Exhibit 1, Employee Appraisals of Willie
Brinkley.

21. Id., Exhibit 6, Affidavit of Gill Lawson, p. 4.

evidence regarding the post-lay-off hiring decisions to draw an inference of discrimination. Furthermore, Lawson's choice of lunch companions is not related to his post-lay-off hiring choices. This court cannot find that Lawson's participation in a segregated lunch table, alone, establishes pretext with regard to Brinkley's discharge.

Fifth, Brinkley contends that DCI's belief that he remained a part-time employee at the time of his discharge is erroneous. While this court accepts as true Brinkley's version of the facts regarding his full-time status, it must be emphasized that this court is not in the position to determine whether the criteria DCI used to discharge Brinkley were "prudent or fair." Damon v. Flemming Supermarkets of Florida Inc., 106 F.3d 1354, 1361 (11th Cir. 1999). Rather, this court's "sole concern is weather unlawful discriminatory animus motivate[d]," id., DCI's determination that Brinkley was a part-time employee. Brinkley's subjective belief that DCI's determination that he was a part time employee is erroneous is not enough to

20

carry the day, and Brinkley has not shown that the criteria DCI used in determining he was a part-time employee were applied differently to a white employee.

DCI is entitled to summary judgment on Brinkley's § 1981 discharge claim.

<u>Cotton</u>: DCI's decision to lay-off Cotton rather than a white employee with necessary skills not possessed by Cotton or a more senior black employee with a broader range of abilities and experiences meets DCI's intermediate burden of production.[22]

The burden therefore shifts back to Cotton to provide evidence indicating that DCI's asserted reasons are pretextual. Cotton supplies the following evidence of racial discrimination to illustrate pretext: (1) DCI's failure to provide him with training; (2) Lawson's use of "Boy," "Jethro," and "Leroy" to refer to him; (3) DCI's hiring of non-protected employees after his dismissal; and

_____

22. <u>Id</u>., Affidavit of Kyle Weaver, p. 7.

21

(4) Weaver's refusal to engage in pleasantries with black employees.

First, the court has already addressed the failure-to-train allegation.  The court's reasoning applies even more strongly in this instance because one of the employees Cotton was directly competing against to retain his job was an African-American employee who had received the training.  Second, the previous analysis finding that Lawson was not a decisionmaker is applicable here to find that Lawson's comments are insufficient to establish pretext.  Third, Cotton has failed to provide the necessary information regarding the employees hired by DCI after his discharge to establish an inference of discrimination.  Finally, Cotton's contention that Weaver did not engage in pleasantries will not suffice to show pretext.  Cotton has not provided sufficient detail about this allegation from which this court can draw an inference that this lack of conversation informed Weaver's discharge decisions.

DCI's motion for summary judgment will be granted on Cotton's claim.

<u>Bush</u>:  DCI's assertion that Bush's job was eliminated for financial reasons satisfies DCI's burden of production.

Bush argues that racial discrimination was the true motivation for DCI's decision to discharge her because (1) she was disciplined for using her cell phone when white employees were not and (2) DCI hired a white employee to fill a position encompassing some of her former duties.

First, Bush's contention that DCI disciplined her for using her cell phone without disciplining non-protected employees for the same conduct cannot satisfy Bush's burden.  Aside from the fact that the two white employees Bush compares herself to did not even hold Bush's job title,[23] <u>see</u> <u>Wilson v. B/E Aerospace, Inc.</u>, 376 F.3d 1079, 1091 (11th Cir. 2004) (comparators "must be nearly identical" to plaintiff "to prevent courts from second-

---

23.  <u>Id</u>. at 23.

23

guessing a reasonable decision by the employer"), Bush does not know whether the supervisor who disciplined her was aware that her two alleged comparators had also used their phones inside.[24]  But more importantly, Bush has not shown how her cell-phone use played any role in the elimination of her job.  Bush cannot make out pretext based on this evidence.

Second, Bush's assertion that she was replaced by a white person cannot establish pretext because Bush has not produced sufficient evidence to support this claim.  Bush is unaware of the position the non-protected employee, Sandy Ingram, was hired to fill or if Ingram conducted any of the non-laboratory tasks Bush performed while at DCI.

Further, Bush cannot show that, for racial reasons, DCI failed to consider her for the position filled by Ingram.  First, Bush does not provide evidence that she applied for the position, which DCI advertised in the paper; she states that she is unsure if she spoke with DCI

---

24.  Id.

staff about the posting.[25]  See <u>James v. Arrow Co.</u>, 75 F.3d
1528, 1532-33 (11th Cir. 1996) (there is not "any added
burden on employers to ... rehire laid-off workers in the
protected [class] as a matter of course").  Second, there
is insufficient information about Ingram's job to
determine if Bush was qualified for it.  DCI alleges that
they hired Ingram to fill in as a receptionist, and there
is no evidence that Bush ever held a receptionist
position.  Third, the position Ingram filled was not
available until after Bush's discharge.

DCI is also entitled to summary judgment on Bush's
claim.


### (2) Failure-to-Transfer Claim

Cotton contends that, because of his relative
seniority, he, instead of Jeremy Strickland, should have

_____

25.  <u>Id</u>. at pp. 55-57.  DCI alleges that Bush never
applied for the position.  Defendant's submission of
evidentiary material in support of its motion for summary
judgment (Doc. No. 33), Exhibit 8, Affidavit of Kyle
Weaver, p. 3.

been transferred to an open-patient-care position approximately two months before his discharge.[26] Cotton's argument is without merit because he has not shown that he sought the position at issue. See James, 75 F.3d at 1532-33.

Cotton argues that he did not express interest in the position because he was not aware of it until after it was filled because DCI did not internally post its availability. Nevertheless, when an employer has publicized an open position, the onus is on the employee to apply. DCI placed advertisements for its job openings in the local newspaper. Therefore, Cotton was provided with notice of the open position and his failure to show any interest in the position defeats any inference that the transfer decision was fueled by racial animus.

DCI's motion for summary judgment is granted on Cotton's failure-to-transfer claim.

---

26. Plaintiffs' brief in opposition to defendant's motion for summary judgment (Doc No. 40), Exhibit 3, Deposition of Jerome Cotton, pp. 72, 87.

## B. USERRA

Congress enacted USERRA to prohibit employment discrimination on the basis of military service.[27] <u>Coffman</u>

---

27.  USERRA states, in pertinent part:

> "(a) A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

> "(b) An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter.

(continued...)

27

<u>v. Chugach Support Servs, Inc.</u>, 411 F.3d 1231, 1234 (11th

Cir. 2005).  To succeed on an USERRA claim, Brinkley must

_____

      27.  (...continued)
           "(c) An employer shall be considered to
           have engaged in actions prohibited-

           "(1) under subsection (a), if the
           person's membership, application for
           membership, service, application for
           service, or obligation for service in
           the uniformed services is a motivating
           factor in the employer's action, unless
           the employer can prove that the action
           would have been taken in the absence of
           such membership, application for
           membership, service, application for
           service, or obligation for service; or

           "(2) under subsection (b), if the
           person's (A) action to enforce a
           protection afforded any person under
           this chapter, (B) testimony or making of
           a statement in or in connection with any
           proceeding under this chapter, (C)
           assistance or other participation in an
           investigation under this chapter, or (D)
           exercise of a right provided for in this
           chapter, is a motivating factor in the
           employer's action, unless the employer
           can prove that the action would have
           been taken in the absence of such
           person's enforcement action, testimony,
           statement, assistance, participation, or
           exercise of a right."

38 U.S.C.A. § 4311.

prove, by a preponderance of the evidence, that his military service motivated DCI's decision to discharge him.  Id. at 1238; see also Harris v. City of Montgomery, 322 F. Supp. 2d 1319, 1324 (M.D. Ala. 2004) (Thompson, J.).  A motivating factor need not be the sole reason Brinkley was discharged, but it must be "one of the factors 'that a truthful employer would list if asked for the reasons for its decision.'" Coffman, 411 F.3d at 1238 (quoting Brandsasse v. City of Suffolk, VA, 72 F. Supp. 2d 608, 617 (E.D. Va. 1999)) (citation omitted).  Brinkley's military status "is a motivating factor if [DCI] relied on, took into account, considered, or conditioned its decision on that consideration.  Id.  Here, Brinkley has met that burden because he has presented direct evidence that Weaver considered his military status when discharging him.

The burden then shifts to DCI to "prove, by a preponderance of the evidence, that the action would have

29

been taken despite [Brinkley's] protected status." <u>Id</u>.[28]
DCI asserts that Brinkley was discharged as part of the
reduction-in-force because they believed him to be a part-
time employee.  The evidence indicates that Weaver based
his opinion that Brinkley was a part-time employee on
several factors including that Brinkley: (1) applied and
was hired for a part-time position; (2) attended school;
(3) continued to work elsewhere during most of his
employment at DCI;[29] and (4) could be called up for
military service.[30]

_____

   28.  This procedural framework is "different from ...
<u>McDonnell Douglas</u>.  ...  <u>McDonnell Douglas</u>, while
allocating the burden of production of evidence, does not
shift the burden of persuasion to the employer. ... [I]n
USERRA actions there must be an initial showing by the
employee that military status was at least a motivating
or substantial factor in the agency action, upon which
the agency must prove, by a preponderance of the evidence
that the action would have been taken despite the
protected status."  <u>Sheehan v. Dept. of Navy</u>, 240 F.3d
1009, 1014 (Fed. Cir. 2001).

   29.  Defendant's submission of evidentiary material
in support of its motion for summary judgment (Doc. No.
33), Exhibit 8, Affidavit of Kyle Weaver, p. 5.

   30.  Plaintiffs' brief in opposition to defendant's
(continued...)

30

First, Brinkley hotly disputes that he was a part-time employee, contending that he worked a full 40-hour week before DCI initiated its reduction-in-force program. Moreover, it appears that a critical factor in Weaver's characterization of Brinkley as a part-time employee, and, more importantly, in Weaver's reduction of Brinkley's hours (so as arguably to render him a part-time employee), was that Brinkley was in the military. And, lastly, there is the question of whether Weaver chose Brinkley for discharge earlier than other employees because Brinkley was in the military.[31]

There is a genuine issue of material fact as to whether Brinkley was discharged when he was discharged because of his military service.

------

30.  (...continued)
motion for summary judgment (Doc No. 40), Exhibit 1, Deposition of Willie Brinkley, p. 72.

31.  There is also a question as to whether there are records to support DCI's calculations of the hours Brinkley worked.

31

DCI's motion for summary judgment will be denied on Brinkley's USERRA claim.

For the above reasons, it is therefore ORDERED as follows:

(1) Defendant Dialysis Clinic, Inc.s' motion for summary judgment (Doc. No. 31) is granted as to plaintiffs Willie Brinkley, Jerome Cotton, and Kimberly Bush's 42 U.S.C.A. § 1981 claims and denied as to plaintiff Brinkley's 38 U.S.C.A. § 4311 claim.

(2) Judgment is entered in favor of defendant Dialysis Clinic, Inc. and against plaintiffs Brinkley, Cotton, and Bush on their 42 U.S.C.A. § 1981 claims, with plaintiffs Brinkley, Cotton, and Bush taking nothing by said claims.

It is further ORDERED that this case will proceed to jury trial solely on plaintiff Brinkley's 38 U.S.C.A. § 4311 claim.

The clerk of the court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

DONE, this the 4th day of November, 2005.

_/s/ Myron H. Thompson_
**UNITED STATES DISTRICT JUDGE**